**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| LEEANN MOCK : | |
| 79 Iron Hill Road : | |
| New Britain, PA 18901 : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: _____ |
| v. : | |
| : | **JURY TRIAL DEMANDED** |
| ALTMAN GROUP OF COMPANIES : | |
| d/b/a ALTMAN GROUP : | |
| 240 New York Drive, Suite 1 : | |
| Fort Washington, PA 19034 : | |
| : | |
| Defendant. : | |

---

## COMPLAINT – CIVIL ACTION

Plaintiff, LeeAnn Mock ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Altman Group of Companies d/b/a Altman Group ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff initiates this action contending that Defendant has violated Plaintiff's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1] and ultimately terminated her from employment in retaliation for her attempts to exercise those rights in violation of the same. As a result, Plaintiff has suffered damages as set forth herein.

### PARTIES

2. Plaintiff, LeeAnn Mock, is a citizen of the United States and Pennsylvania, and currently maintains a residence at 1208 Yardley Road, Yardley, PA 19067.

---

[1] Plaintiff intends to amend her Complaint to include a count under the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. C.S.A. § 951, *et seq.*, once her claims have been administratively exhausted with the Pennsylvania Human Relations Commission, which will occur in February 2022. Plaintiff's claims under the PHRA would mirror Plaintiff's ADA claims discussed herein.

3. Upon information and belief, Defendant Altman Group of Companies d/b/a Altman Group is a for-profit business duly organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a place of business located at 240 New York Drive, Suite 1, Fort Washington, PA 19034.

## JURISDICTION AND VENUE

4. On or about February 15, 2021, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (c), and 43 P.S. § 959(a).  Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2021-01965.  Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated June 8, 2021, Plaintiff received a Notice of Rights to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

6. On or about September 02, 2021, within the statutory time frame applicable to her claims, Plaintiff filed the instant action.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

8. This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. The venue in this district is proper pursuant to 28 U.S.C. § 1391, as the parties reside in this judicial district, doing business herein, and the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

11. Paragraphs 1 through 10 are hereby incorporated by reference as though the same were fully set forth at length herein.

12. In or around September 8, 2020, Defendant hired Plaintiff in the position of Community/Property Manager.

13. At all times material hereto, Plaintiff performed her job well, receiving positive feedback, and no justifiable discipline.

14. At the time of Plaintiff's hire, Plaintiff had approximately twelve (12) years of property management experience.

15. Plaintiff spent the first few days of employment completing numerous trainings that were implemented by Defendant.

16. During these first few days of employment and continuing until the approximate second week of her employment, Defendant did not provide Plaintiff with access to her work-related phone messages, emails, and system.

17. Shortly after her hire, in or around September 12, 2020, Plaintiff sustained an injury to her foot.

18. The following day, in or around September 13, 2020, Plaintiff sought medical treatment from the hospital and was diagnosed with a fractured foot.

19. Plaintiff's fractured foot constitutes a disability within the meaning of the ADA as it substantially impairs one of more of her major life activities.

20. Immediately thereafter, in or around September 14, 2020, Plaintiff informed Defendant of her disability, requested two (2) days of medical leave, and advised Defendant that as one partial stage of her attempted recovery process, Plaintiff was restricted and required to wear a boot for approximately six (6) to eight (8) weeks.

21. Plaintiff informing Defendant of her restriction in connection to her disability constitutes a request for a reasonable accommodation within the meaning of the ADA.

22. Subsequent to Plaintiff informing Defendant of her disability and requesting a reasonable accommodation in connection thereto, Defendant did not and subsequently never did provide Plaintiff with a business telephone.

23. As a Community/Property Manager, a company provided business telephone was essential to have and essential for Plaintiff to adequately perform her job.

24. Upon information and belief, Defendant did not provide/and or intentionally delayed in providing Plaintiff with a business telephone, as is regularly provided, because Plaintiff was disabled and/or in retaliation for Plaintiff's request for a reasonable accommodation.

25. Upon information and belief, Defendant did not provide/and or intentionally delayed in providing Plaintiff with access to her email and work system because Plaintiff was disabled and/or in retaliation for Plaintiff's request for a reasonable accommodation.

26. Merely ten days later, in or around September 24, 2020, in notably close temporal proximity to Plaintiff's disability diagnosis and subsequent request for a reasonable accommodation, Defendant's Manager Dana Last Name Unknown ("Dana LNU") suddenly terminated Plaintiff.

27. The alleged reason provided to Plaintiff by Dana LNU was that Plaintiff was "not living up to expectations."

28. As stated above, Defendant did not provide Plaintiff with access to her phone/phone messages, emails, and system(s).

29. When Defendant finally did provide Plaintiff with access to the above, there were naturally hundreds of unread emails and approximately one hundred and forty (140) voicemails.

30. Plaintiff attempted to listen to the most recent voicemails first, but the system forced her to start with the oldest message first, thus making Plaintiff unable to even get to the new voicemails quickly.

31. However, even considering the above, since the beginning of Plaintiff's employment and continuing until Plaintiff's sudden termination, Defendant never notified Plaintiff of any alleged work performance deficiencies and as such, never issued Plaintiff any prior write-ups.

32. Presumably, this was because Plaintiff was performing her job well, and simply could not have answered emails and/or voicemails because Defendant did not provide her access with the same.

33. Accordingly, Plaintiff was indeed qualified for her position.

34. Accordingly, Defendant's alleged reason for Plaintiff's termination was clearly pretextual.

35. Upon information and belief, Plaintiff was replaced by an individual who did not suffer from a disability and/or who thus did not request a reasonable accommodation.

36. Upon information and belief, Defendant provided this individual with a business telephone.

37. Based on the foregoing, Plaintiff believes that Defendant's alleged reason for her termination was pretextual, and that Defendant's actual reason for terminating her was because of her actual and/or perceived disability, because Defendant regarded her as disabled, and in retaliation for requesting a reasonable accommodation in connection thereto, in violation of the ADA and PHRA.

38. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, and earnings potential.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION AND RETALIATION

39. Paragraphs 1 through 38 are hereby incorporated by reference as though the same were fully set forth at length herein.

40. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

41. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

42. Plaintiff's disability substantially impairs her ability to engage in major life activities.

43. Despite her disability, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation, including, but not limited to, a medical leave of absence.

44. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, and by terminating Plaintiff's employment on the basis of her actual and/or perceived disability, and in retaliation for Plaintiff's request for a reasonable accommodation in connections thereto.

45. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages and front pay, in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive and/or compensatory damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                Respectfully submitted,

                **MURPHY LAW GROUP, LLC**

By: */s/ Michael Murphy*
     Michael Murphy, Esq.
     Eight Penn Center, Suite 2000
     1628 John F. Kennedy Blvd.
     Philadelphia, PA 19103
     TEL: 267-273-1054
     FAX: 215-525-0210
     murphy@phillyemploymentlawyer.com
     *Attorneys for Plaintiff*

Dated: 9/03/2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.